**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LIBERTY MUTUAL INSURANCE COMPANY,**

            **Plaintiff,**

    **vs.**
                                                   **10-CV-717**
                                                  **(MAD/DEP)**

**CONMAS, INC., CONSOLIDATED MASONRY**
**CONTRACTORS, INC., STEVEN TAYLOR and**
**MAUREEN TAYLOR,**

            **Defendants.**
_____

**APPEARANCES:**                                              **OF COUNSEL:**

ERNSTROM & DRESTE, LLP                             Matthew D. Brown, Esq.
180 Canal View Blvd
Suite 600
Rochester, New York 14623
*Attorney for Plaintiff*

HINMAN, HOWARD & KATTELL, LLP.              Harvey D. Mervis, Esq.
80 Exchange Street
700 Security Mutual Building
Binghamton, New York 13901
*Attorney for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

    Liberty Mutual Insurance Company ("plaintiff" or "Liberty") commenced the within action against defendants for breach of a General Agreement of Indemnity ("Agreement"). Specifically, plaintiff asserted causes of action for breach of contract, common law indemnity, specific performance and attorneys' fees. Presently before the Court is plaintiff's motion for

summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 19).  Defendants have not opposed or otherwise responded to plaintiff's motion.[1]

## FACTUAL BACKGROUND[2]

Plaintiff is a foreign corporation engaged in the business of issuing surety bonds.  Plaintiff is authorized to do business in the State of New York with a principal place of business in Plymouth Meeting, Pennsylvania.  Defendants ConMas and Consolidated Masonry Contractors are New York corporations with their principal place of business in Binghamton, New York.  On March 14, 2004, defendants executed the General Agreement of Indemnity.[3]  The Agreement provided, *inter alia*:

> The indemnitors shall exonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including

---

[1] On July 6, 2011, plaintiff submitted a letter motion requesting that the Court deem the motion for summary judgment "unopposed". (Dkt. No. 21).  Defendants did not respond to that letter motion.  On July 7, 2011, the Court denied the request.

[2] Plaintiff properly filed a Statement of Material Facts pursuant to Local Rule 7.1.  Defendants, although represented by counsel, failed to respond to plaintiff's Local Rule 7.1 Statement of Material Facts.  Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute.  <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Local Rule 7.1(a)(3)(emphasis in original).  As defendants have failed to properly respond to plaintiff's Statement of Material Facts, the Statement will be accepted as true to the extent that the facts are supported by evidence in the record.  *See Orraca v. Pilatich*, 2008 WL 4443274, at *3 (N.D.N.Y. 2008); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (the Court deemed the properly supported allegations in the defendant's L.R. 7.1 Statement admitted for the purposes of the motion).

The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) plaintiff's Statement of Material Facts; (4) the exhibits and evidence submitted by plaintiff in support of their Motion for Summary Judgment; and (5) the affidavit of Michael Bramhall, Surety Counsel for plaintiff, submitted in support of the within motion. The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

[3] Defendant Steven Taylor executed the Agreement in his capacity as President and Individually.  Maureen Taylor executed the Agreement, individually.

>   but not limited to pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.
>
>   If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the indemnitors and Principals will be obliged to indemnify the surety under the terms of this Agreement or any Other Agreements, the indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims thereof.
>
>   . . . the vouchers and/or evidence of any such payments made by the Surety shall be prima facie evidence of the fact and the amount of the liability to Surety.

Thereafter, plaintiff claims that ConMas entered into construction contracts with public and private owners and with general contractors for public and private improvement projects.[4] Pursuant to those contracts and applicable law, ConMas was obligated to provide construction surety bonding. At defendant's request, plaintiff issued surety bonds including payment and performance bonds in connection with various construction projects involving defendants including, but not limited to, the following projects: Delhi District Wide Renovations (#837039714); TK Beecher Elementary (#837039723); Oswego DOT (#837039728); Vestal CSD

---

[4] These contracts are not part of the record herein.

3

Cap Improvements (#837043677); Diven Elementary School (3837043679); Delhi CSD (#837043684); Cooperstown CSD Phase I (#837043685); Arena; Mills Hall Kitchen-SUCO (#837045295); Harpursville CSD (#837045304); ADA Modifications Phase II (#837045309): and Retaining Wall @ SUCO (#836047131).

Plaintiff further alleges that each payment bond guaranteed payment to laborers, contractors and/or suppliers of ConMas on the various projects. Plaintiff further alleges that after the bonds were issued, ConMas failed to pay some of its subcontractors, suppliers and laborers which resulted in claims by subcontractors, suppliers and/or laborers on various bonds issued by plaintiff. After conducting a thorough investigation and determining that some claims were valid, Liberty paid claims and incurred expenses.

On May 11, 2010, plaintiff demanded that defendants post collateral security in the amount of $1,535,921.00. Defendants failed to post the collateral. Plaintiff claims that the loss was subsequently reduced by sums recovered from project owners. Thus, the amount still due and owing to plaintiff is $814,146.61 without interest and costs.[5] Plaintiff also claims that it has incurred attorneys' fees in the amount of $44,702.14.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in

---

[5] In the initial submission, plaintiff sought damages in the amount of $1,328,727.80. On July 29, 2011, plaintiff's counsel submitted a letter to the Court advising that plaintiff had recovered additional balances from project owners. Accordingly, plaintiff's net loss was $814,146,61 (exclusive of attorneys' fees, interest and costs associated with the action). (Dkt. No. 23).

4

dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. Even if the motion is unopposed, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir.2004).

"[I]n a contract dispute, summary judgment will be awarded only where the language of the contract is unambiguous." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996). When the language in the contract is clear, "the Court must give effect to the express rights and obligations of the parties contained therein and such interpretation is an issue of law that may be determined on a motion for summary judgment." *N. Am. Specialty Ins. Co. v. Montco Const. Co., Inc.*, 2003 WL 21383231, at *5 (W.D.N.Y. 2003) (citations omitted). An "Indemnity Agreement is not only valid and enforceable under New York law . . . but also governs the relationship between the parties to the extent that [], a general contractor, has expressly agreed to indemnify [], the surety, for losses arising from claims made on the Bond." *Id.* (citations and internal citations omitted). In the absence of bad faith, the indemnity agreement governs the relationship between the contractor and the surety. *Gen. Ins. Co. Of Am. v. K.*

5

*Capolino Constr. Corp.*, 903 F.Supp. 623, 626 (S.D.N.Y. 1995). "A collateral security provision in an indemnity agreement, which is clear and unambiguous, . . . that imposes upon an indemnitor, [] an obligation to provide a surety collateral security after the surety has received a demand [], and prior to any actual bond loss, is valid and enforceable." *Travelers Cas. and Sur. Co. v. Dale*, 542 F.Supp.2d 260, 264 (S.D.N.Y. 2008) (citing *Am. Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299 (2d Cir. 1989)). Furthermore, courts have upheld indemnity agreements that provide that "the vouchers or other evidence of any such payments shall be prima facie evidence of the fact and amount of defendant's liability to plaintiff". *See N. Am. Specialty Ins. Co. v. Schuler*, 291 A.D.2d 924, 925 (4th Dep't 2002).

Here, plaintiff claims that defendants breached the Agreement because (1) plaintiff incurred losses arising from demands; (2) defendants failed to indemnify plaintiff despite due demand; and (3) defendants failed to deposit collateral security despite due demand. In support of the motion, plaintiff provided copies of the payment and performance bonds, copies of payment records and evidence that plaintiff made a demand for collateral in accordance with the terms of the contract and defendants failed to respond. Moreover, the record contains uncontroverted testimony from Michael Bramhall, Surety Counsel for plaintiff, that plaintiff conducted "a reasonable investigation of the clam submitted, including supporting documentation supplied by both the claimants and ConMas itself. Each payment was made in the good faith belief that the surety was potentially liable for such claims". Upon review, the Court finds the terms of the Indemnity Agreement clear and unambiguous. Moreover, plaintiff met its burden on the motion of establishing that payment was made in good faith and was reasonable. *See Centennial Ins. Co. v. 4-A Gen'l Contracting Corp.*, 13 Misc.3d 1217(A) (N.Y. Sup. 2006) (the plaintiff made a *prima facie* showing with the sworn affidavit of the surety claims specialist, the

indemnity agreement, the bonds and documentation of payment). Defendants do not dispute that they executed the Agreement and state that, "the document speaks for itself". Defendants have not submitted any opposition or response to the within motion. Based upon plaintiff's submissions and the unopposed Statement of Facts Not In Dispute, the Court finds that plaintiff has demonstrated that it is entitled to judgment as a matter of law.

With respect to attorneys' fees, "the general rule is that 'attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule' ". *Travelers Cas. and Sur. Co.*, 542 F.Supp.2d at 264 (based upon the contract language, the defendant intended to waive the benefit of the general rule and compensate the plaintiff for attorneys' fees, expenses and costs). Here, defendants agreed to indemnify the Surety for "court costs, counsel fees, accounting, engineering and any other outside consulting fees". While plaintiff provided copies of invoices allegedly demonstrating attorneys' fees and costs incurred as a result of the within action, plaintiff's submission does not include an affirmation from any attorney or legal personnel regarding the services rendered, his or her background and experience and the customary fees and/or hourly rate charged for similar legal services. *See id.* (without this information, the Court cannot determine the reasonableness of the plaintiff's request); *see also Centennial Ins. Co.*, 13 Misc.3d at 1217(A) (conclusory assertions of the plaintiff's claims specialist regarding attorneys' fees and copies of checks to counsel do not establish that the fees charged were reasonable). Accordingly, the Court will allow plaintiff to supplement the request for fees with the aforementioned information. *See Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A., Inc*., 253 F.Supp.2d 578, 587 (S.D.N.Y. 2003).

**CONCLUSION**

It is hereby

**ORDERED** that plaintiff's motion for summary judgment (Dkt. No. 19) is **GRANTED**, it is further

**ORDERED** that the Clerk of the Court enter a Judgment on behalf of plaintiff against defendants in the amount of $814,146.61.  Further, plaintiff is entitled to post judgment interest as calculated pursuant to 28 U.S.C. § 1961(a), and it is further

**ORDERED** that plaintiff shall submit supplemental information regarding attorneys' fees within 30 days of the date of the within Order.

**IT IS SO ORDERED.**

Dated: October 20, 2011

_____
Mae A. D'Agostino
U.S. District Judge